Please be seated. Thank you. Welcome to the Fifth Circuit. We have three cases that we'll hear today. We're doing a slightly earlier afternoon sitting. Most of this is to accommodate me tomorrow when I have to leave. So the first case is 25-10322, U.S. v. Williams, and we will hear first from Ms. Williams. Is that right? Ms. Ito. Pardon me? Oh, yes, yes. How do you pronounce it? Ito? Ito. Ito. Okay, great. May it please the Court, my name is Louie Ito, and I'm here on behalf of Appellant Paul Williams. I will first address California robbery and then harmlessness. California robbery is not a crime of violence under the guidelines because it can be committed by reckless use of force, whereas the guidelines definition, like Hobbs Act robbery, requires a mens rea greater than recklessness. Despite agreeing that the Commission imported word-for-word Hobbs Act robbery into the guidelines definition, the government asked the Court to view these offenses as having different mens rea. The government is wrong. Plain text, precedent, and the Commission's intent all lead to the same conclusion. Robberies committed recklessly are not crimes of violence. So it was a crime of violence under our law, but your argument is after the amendment, 822? Yes, Your Honor. The text of the guidelines changed. Yes. And then because of the consensus you point to, we now know there's a higher scienter, even though it's not explicit in the text. Is that fair for me to say? That's correct, Your Honor. I would add... My next question might be just tell me the rule of orderliness structure, because we do have a published Fifth Circuit case that says it's holding is, it is a crime of violence, California robbery. So what's the rule when a guideline text changes? That's equivalent to statutory? Is that fair? Yes, Your Honor. It is an intervening guidelines amendment that wipes away the prior precedent, and I believe this Court recognized that in WICWARE. WICWARE concerned the effect of this very same guidelines amendment. WICWARE is a PC unpublished opinion, and it's just a footnote that says we're not deciding that issue. Am I right or wrong? I believe it is published, Your Honor. Oh, it is? Okay, good. And so there's a supplemented opinion where this Court said in a footnote that it was not ruling on the specific mens rea issue that we are raising here. That's WICWARE? Yes. In a footnote, it says we're not ruling. That doesn't necessarily mean, though, Teles Martinez isn't still controlling. It just means they aren't deciding. That's correct, Your Honor. Okay. But elsewhere in the WICWARE opinion, and WICWARE concerned whether Santiago Esteban Hernandez, the Fifth Circuit case saying that Texas robbery fell under the generic definition, WICWARE said that the effect of the guidelines amendment is to wipe away that precedent. And I would think it is if the text is explicit, but if there's no explicit text, you know where I'm going. It's the briefs, both of you, superb briefs, I think. Sienta isn't put in there, and we do have a body of law that says we don't put Sienta in. So how do you respond to that? Basically, you're asking us to look to other circuit law interpreting the Hobbs Act, but even our Court has never said Hobbs Act requires intentionality. This Court did say that Hobbs Act robbery satisfies the force clause, which under Borden, that word against the person of another requires intentionality. So it's no good under the, but that's getting us into trickery. They're not defending this under the force clause. Borden is interesting, and that would be a whole other line of inquiry. You may be right. But if we're looking at the enumerated clause, we haven't said Borden applies. There's no, right? So then I guess it's reiterative of my earlier question. We, as the Fifth Circuit, have never said there's a heightened Sienta. So don't, so you're asking us to borrow from, yeah? I believe the Court is referring to Sirfaz, Frye, and Singleton, the cases cited by the government where this Court declined to read a mens rea requirement into sentencing guideline enhancements. So this case is different from those cases in three important respects. The first is that the Commission didn't just write this guidelines definition out of nowhere. They didn't come up with that language out of thin air. They purposely imported the language from Hobbs Act robbery, noting, knowing the body of case law, interpreting that same exact language uniformly. But there's nothing in the commentary that they meant to contract COVs, right? The purpose was to expand a COV. Is that right? The purpose was to expand the COV to include Hobbs Act robbery, which the Commission said oftentimes involves violence. And also, every circuit court has said Hobbs Act robbery requires intentionality. But us, we haven't. Indirectly, Your Honor, this Court said it says violence requires intentionality. Your argument is powerful intellectually. I'm just, I'm wondering if there is no text with Sienta, can we overrule Tellez-Martinez? And you're saying, well, the text implies it. The full consensus of court sticks it in there. I think WICWARE already said that this is an intervening guidelines amendment that wipes away Tellez-Martinez. So this Court is interpreting, you know, what does this guidelines language mean? No one's criticized Tellez-Martinez in the three years that we've had 822, right? Even the Ninth Circuit has not yet said California robbery isn't a crime of violence. That's strange. If this amendment is so clear, why would no circuit court yet? Well, I would say the Ninth Circuit already disagreed with Tellez-Martinez. I believe before this amendment, they said that. But your argument is the amendment. Yes, so I'll go back to the amendment. So there's three ways in which this case differs from the cases where this Court has declined to read an explicit measure. So one is this background history where the commission didn't do this in a vacuum. They did this knowing that the circuits have uniformly interpreted this language to require intentionality. Number two, in Cerfas, Frye, and Singleton, those cases concern Chapter 2 sentencing enhancements that applied if the defendant committed the crime in a certain way. And each of those cases discussed the difference between a strict liability sentencing enhancement versus a strict liability crime where there isn't a due process problem with the strict liability sentencing enhancement. This is a recidivist enhancement that applies if the defendant committed the entire standalone crime prior to this offense. So the context, again, is completely different. It's not a Chapter 2 sentencing enhancement that applies if you commit the crime in a certain way. And number three, in each of those provisions, there was an analogous neighboring provision that did include an explicit mens rea requirement. So taking Singleton, for example, there's a neighboring provision saying that if the defendant knowingly possessed explosives, he would be subject to an enhancement. So this Court reasonably said, well, if the commission wanted to imply that the stolen firearm enhancement required a santer, that it knew how to say so. But here we don't have an analogous neighboring provision where there is an explicit mens rea requirement. I think it's important to consider the commission's intent. And our position is that when the commission adopted Amendment 822, it made a policy choice to exclude reckless offenses. Counsel, I think you filed a 28-J letter respecting an amendment that is before the commission right now. Is that amendment, if adopted, it would exclude reckless conduct from the definition of robbery? Is that right? I thought I read that in your 28-J. Yes, Your Honor. So it was a proposed amendment. Proposed amendment to exclude reckless conduct. Yes. Okay. Doesn't that suggest that reckless conduct is not included or is included right now? So that amendment concerned very big changes, completely getting rid of the categorical approach. And there the defendant would have to affirmatively show that his case involved reckless rather than intentional conduct. So my point was not so much that Mr. Williams would qualify under that amendment. My point is that we have several— Well, no, my point is that you're relying on the presumed or inferred intent of the commission when it imported the language of the Hobbs Act. Okay. That requires some inference. If we have another amendment that would exclude reckless conduct, isn't the inference that it is included right now? Well, I think the proposed amendment, which I believe it ended up not adopting but it proposed, was to completely get rid of the categorical approach. Robbery offenses would presumptively qualify unless the defendant can show that it was reckless. So I think that's kind of a different context. I cited that proposed amendment as one of three indicators of the commission's intent back in 2023 when it adopted this definition. We believe it's clear that its intent was to exclude reckless offenses. That's not absurd. That's not an unintended consequence. So, one, we see in 2026 they said we want to exclude reckless offenses, albeit in a different context. Number two, it said that it wanted to reserve career offender for the most dangerous offenders. It said that when it adopted 798 and 822 and under Borden, those who purposely commit violent crimes are more dangerous than those who do so recklessly. Second, as we've discussed earlier, it imported the entire Hobbs Act robbery definition knowing that that same language has been uniformly interpreted as excluding reckless offenses. And then it did nothing for two amendment cycles after the DOJ urged it to adopt another amendment to make clear that reckless offenses are included. So this history shows that excluding reckless offenses was their intent. It's not absurd. It's not an unintended consequence. And even if it was, the solution is not for this court to adopt an interpretation contradicting its precedent interpreting Hobbs Act robbery. It is for the commission to amend the definition. With the court's permission, I'd like to turn to harmlessness. So the robbery issue was preserved. So the government bears the burden of showing harmless error. To support a finding of harmlessness, the record must show clarity of intent expressed by the district court. This record contains mixed messages. It lacks the clarity needed to reach a harmlessness conclusion. On the one hand, there's three indicators that the court intended to sentence within the incorrect range. So first, I want to point to the absence of any explanation for the sentence. 3553C requires the court to state reasons in open court for imposing a variance. But no explanation is needed if sentencing within the range. Here, there's no explanation for the sentence. So the absence of an explanation is indicative of the court's intent to sentence. Your argument here is that we think you're right, but we then say it's harmless. And you're saying, no, it can't be. It can't be harmless. And Ibarra-Luna is sort of the test. The district judge would have had to have said, I would give the same sentence for the same reason you're saying he didn't say that. That's correct, Your Honor. So I want to make two points on that. So number one, I do think we're under Ibarra-Luna. I do think the district court did not consider the correct range. I'm aware that there's cases saying that if the court entertained objections as to the lower range, that means it considered it. But there's also cases like Tanksley and Greer where the objections were foreclosed and this court said the correct range was not considered and it applied to Ibarra-Luna. 3553, harmlessness, is a disarray out there among the circuits, correct? We're more liberal on when we say an error is harmless. Yes, Your Honor. And I believe the Kinsey opinion recognized the different approaches. The Third Circuit, the Tenth Circuit applies different tests. But we don't even need to go there because this record is so peculiar in many respects. But I just want to mention, so here the court, there are two objections made below. The court believed the robbery objection was foreclosed and the drug objection had out-of-circuit authority against us, nothing in our favor. And so we believe this case is more like Tanksley and Greer. And there's a third case, Halverson, which was not in our briefing, but I wanted to bring it to the court's attention. I've notified opposing counsel and I'm happy to submit a 28-J letter. But in Halverson, the district court wrongly believed that the objection was foreclosed and this court applied Ibarra-Luna. So looking at the array of cases, we think this case is more like, yes, Your Honor. Well, excellent presentation. You covered a lot of ground, but there is the drug conviction still. To prevail, you have to win twice, right? We have to agree to supplement and then interpreting the supplement, we have to say the fellow didn't have counsel. Am I right? All under plain error review or are any of those pieces wrong? Well, I believe the court should look at each of our guideline objections separately. No, I understand. I'm just saying with just a minute left on the drug conviction. Yes. It is reviewed for plain error. Yes. And for you to prevail, you would have to get the supplement. That's correct. So let's say we grant the supplement. How is it clear and obvious he didn't have counsel? Because the certified docket says that he was not present when the sentence imposed and counsel was not present. And I know the government is saying that, oh, he may have waived counsel, but under Ferretta, he can't waive counsel in absentia. So we think that the plain error is clear under Supreme Court precedent, under this court's precedent. But we do presume indigents had counsel. Admittedly, Ferretta is a hard machine. It could be a separate Ferretta hearing. But there is a presumption. I believe the California law is that people cannot be sentenced without counsel, but the certified docket on its face says that he was not present and counsel was not present. OK, great. And finally, there's additional problems with this court crediting the disclaimer. Because the district court is supposed to calculate the correct range and justify a variance from it on the record, there's no rationale for a variance at sentencing. So if this court is to credit the written disclaimer, it's effectively saying that that disclaimer by itself did the work of calculating the correct range and justifying a variance from it. And that is the sentencing rationale not made in the defendant's presence at sentencing. Thank you, counsel. We'll hear from the government. Ms. Mitchell.  May it please the court, Amy Mitchell for the United States. The Supreme Court has called robbery a quintessential crime of violence. But because of the difficulties of the categorical approach, despite that characterization, the issue before the court is whether continues to qualify as a crime of violence under the guidelines. And the answer turns on whether the guidelines definition requires the intentional or knowing use of force. The answer is no. Has any circuit upheld a California robbery crime since May 2023? Has any circuit said it is a crime of violence after this amendment? It has not been raised. So there's currently a case before us. So the Ninth Circuit hasn't? No. There's currently a case before the Ninth Circuit, but it's still in the briefing stages. Ah, interesting. Yeah. So. You're in my rule of orderliness questions. I don't think you're arguing that we're bound by Tellez-Martinez. Your footnote four seems to say you agree with opposing counsel that WICWARE suggests that we aren't bound. Your whole brief suggests we should just decide this issue on the merits. And I would have thought maybe there was a rule of orderliness issue. I think based on what the court said in WICWARE, that this is sort of like superseded by regulation or something along those lines. Yeah, but that's a huge issue for our court and maybe any court. When can this unique creature, the Sentencing Commission, overrule circuit authority? And so I guess I was asking them, what's the clearest statement as to when the Sentencing Commission can just say, Fifth Circuit, we're going to overrule your published authority? I would have thought you would have pushed. I mean, this isn't criticism, but I thought it had to be explicit in the text. And your argument is Santer isn't explicit, and therefore the logic would be Tellez-Martinez still controls. But you're saying Tellez-Martinez doesn't, and I'm wondering why. If the commission just inferentially doesn't like Fifth Circuit law, we as a panel of three can say we're going to ignore an earlier panel? I wouldn't say ignore it. I think Tellez-Martinez could help guide the court's analysis. Okay, but that's really important. So the commission, the government's position is the commission, even inferentially, has authority to overrule published Fifth Circuit law. The court has to look now at a different definition. So I think that's where the rub is. Okay, and there is a different definition, and their argument, I may be oversimplifying it, is every single circuit that's ever looked at Hobbs Act definition, now text of this, has said it does have heightened standard inconsistent with Anderson, end game. That's what their argument is. Yes, but there are good reasons based in the purpose of the guideline amendment and the context that we look at this, for the court not to interpret it the same way and not to include that mens rea on an enumerated offense. But you're not saying Hobbs Act has the lower mens rea. You're agreeing that Hobbs Act does? I'm just trying to understand exactly what the government's argument here is. It isn't rule of orderliness, and you're agreeing that the definition textually is now Hobbs Act, and you're agreeing every court that's interpreted it has had higher center. So what exactly is the argument that would allow us to be the first court to say Texas-California robbery with a lower center still counts? What's the exact argument you're making? So I want to start with just the plain language of the California statute alongside the plain language of the guideline itself. They are nearly identical. The guideline defines robbery as the unlawful taking or obtaining of personal property from the person or in the presence of another against his will by means of actual or threatened force or violence or fear of injury. California defines it as the felonious taking of personal property in the possession of another from his person or immediate presence and against his will accomplished by means of force or fear. And the mens rea requirement for California robbery is the specific intent to deprive the victim of their property. But we know California courts, specifically Anderson, have interpreted it without the heightened center. Correct. There's no separate, in California law, there's no separate center requirement for the use of force. But the robber is using force to accomplish a taking. So it's not... But it can be accidental like it was in the Anderson case. I don't think it can be accidental. I thought that was the basis for Anderson's conviction. Well, I think really the facts in Anderson to me indicate that was really a reckless injury to the victim. So he's driving 25, 30 miles an hour out of a parking lot and it's at night and he has his head down and he just stole a car and he runs over the owner of the car and kills her. That behavior is reckless. I mean, he was ignoring a known risk whenever he did that. So I think there would be a Duenas-Alvarez problem in terms of there actually being something that would be an accidental injury in the course of a robbery. I thought, maybe I'm missing it, but I thought that we had precedent. Fry, I thought was one of them. I think Judge Higginson has referred to that at some point, that if a guidelines provision doesn't make any reference to a mental state, we're not going to import one to imply a heightened mental state, intentionality state. Correct. Even if the language is, should not in light of the apparent intent of the drafters. I guess that's a reference to the commission. The argument here being made on the other side is, well, the apparent intent, I don't think it's the explicit intent, but the apparent intent was to bring the Hobbs Act level of scienter into the guidelines. I think that's the argument. And I thought the argument was, well, our precedent doesn't really work that way. Isn't that the argument? That's the argument that they're making. I don't think that's the case. I think what the Sentencing Commission was trying to do is to be sure that threats to property were included. I guess my point is, the fact that we're having to ponder what the intent of the Sentencing Commission is, our precedent says we don't do that with respect to a guidelines provision. I mean, it doesn't say that it brings in an intentionality requirement, does it? No, it doesn't. Okay, so doesn't our precedent say we're not going to sit around and speculate about the intent of the commission? Well, I don't think this is speculation, because if you look at the reasons for the amendment, it's very specific. It doesn't talk about, we want to include this additional mens rea requirement. It only talks about wanting to include Hobbs Act robbery as an enumerated offense under the guidelines. These may be friendly questions. Yeah, no, my question was friendly. I mean, you may be coming up with a different reason why you would prevail, but my question was friendly. I thought our precedent was that we shouldn't sort of infer, inferentially bring into the guideline a heightened scienter requirement. Doesn't our precedent say that? Yes. Okay, I thought so. Yes, it does. And I guess this question about the Sentencing Commission, can it inferentially overturn our precedent? I mean, I would be surprised if the United States' position was that it could. I think it just changes the analysis. I wouldn't say it would necessarily overrule precedent, but the court has to look at this particular case. I mean, they can change definitions. They can do that. They can't overrule our precedent. They can give us a different subject to look at. Correct. We can't overrule our precedent. Our precedent is what it is. It is. Do you know the name of the Ninth Circuit case that's considering this issue? I do. Have they already had oral organ? Sorry? Have they already had oral organ? No. The Ninth Circuit case is Pineda. Pineda? And it's 26-126. There's also a case pending in the Eighth Circuit on Texas robbery, which has the same sort of mens rea issue. And that one was argued back in April, but it hasn't been decided yet. And that one is Benavides. I know there was helpful, interesting 28-J about correspondence in the department telling the commission, beware, you may have unintended consequences. That's helpful. We'll consider that. I don't have a question about that. My question is, in the actual proceedings leading up to the commission amendment, was there any talk at all about contracting what is a CLV? No. For the robbery part of it, it was to expand it. Okay. You've probably read it more than I have. I just want to be sure. You know, all the hearings they had leading up to this. I don't know about all the hearings. I'm going from what the reasons they gave when they adopted the amendment. Okay. I know the commentary. I was just wondering if you'd looked at the hearings. Okay. Would it be a different story if in the commentary they said this was both to expand but contract? We want a heightened scienter standard? It would make a difference in the analysis, yes. It would be very different if it were in the commentary but it weren't in the text. Again, okay. Anyway. Going back to just the plain language, as we've talked about, you know, the court typically does not read a mens rea requirement into a guideline when one hasn't been placed there by the commission. Also, the enumerated offense clause doesn't require the same level of culpability as the force clause does. And this court has held an unpublished case, that's Jack O. Williams, that Borden did not address recklessness in the context of the enumerated offenses clause. So we said it didn't address it but other circuits like the Eighth and Elias have said it actually doesn't cross over. But we've never said Borden doesn't apply. We've just said we aren't deciding it. Is that right? It's unpublished. It wasn't that the court didn't decide it but it was not a published case so it's not present. But yes, the Eighth Circuit affirmatively said it doesn't apply to the enumerated offenses clause. So unlike the force clause, the enumerated offenses clause does not require force against the person of another. So it's a lower level of force. It is more aligned with just a use of force. Robbery requires theft by means of force so it's a use of force and that can be reckless conduct under Voisin. Do you want to move to the drug conviction or do you want to take harmlessness first? You can start with the drug conviction. The record, even if it were supplemented, it is still not clear what happened. And I don't think you can overcome... It's in doubt but it's not clear. Is that the position of the government? Yes. The most that does. Right. But you did oppose the supplementation and they cite cases where we allow the government to supplement in criminal history cases, even over opposition. So are you now saying we're happy with the supplement, we'll accept the docket sheet? Is that the position? Why would the government oppose a docket sheet supplementing that might help us on criminal history? Primarily just because it wasn't raised at all. And typically when... Like we had conviction documents in an ACCA case, for instance, or even in one of these cases. But you moved to supplement, and even though they cite cases over opposition, we grant it just to get it right. You may still win on plain error. Anyway. So yes, sometimes the court grants them, sometimes it doesn't. But my point being that the record just simply isn't clear about what happened. What could have happened? In light of Ferretta, what could have happened? How could he possibly have had counsel? It could have been a different hearing, as you mentioned. It could have been a written waiver. You know, we just don't know. So you're resting on the second prong of plain error review. It's not clear and obvious he lacked counsel because he might have waived it in another hearing. We don't know. Correct. And at the beginning of that case, he did have counsel. It's just we're at a probation revocation at that point where it says he wasn't there and didn't have counsel. On the issue of harmlessness, first I want to say mea culpa because if the criminal history points were actually plain error, then the district court did not consider the alternative range because it wasn't considered at all. But in that instance, because it's plain error, the burden would be on Mr. Williams. Regarding the crime and violence issue, the district court was aware of the alternative range because it was included in Williams' PSR objections. And those objections were discussed at length during the sentencing hearing. Ultimately, they were overruled. And this court has regularly found that it is sufficient to show that a district court considered the alternative range when it considers, when it knows the alternative range and considers the objections. The court then heard detailed mitigation information from Williams' counsel and from Williams and based on the statutory sentencing factors, which is what the judge specifically said he was relying on, the district court sentenced Williams to 77 months. And there's no indication from the record that that was tied to the guidelines. You know, we don't have a statement in here like, I'm giving you a guideline sentence. There's none of that. This is just strictly on the statutory sentencing factors was the explanation. And then in the statement of reasons, the district court specifically listed the 3553A factors that it relied on and then said, even if the guidelines were wrong, I would have sentenced him to the same thing. And this court will take sentencing courts at their word. And so if there was error here, it was harmless. Thank you, counsel. I have one more point I want to make talking about statutory cans of interpretation. If the court were to read an additional mens rea requirement into the guideline, basically enumerated robbery becomes surplusage because every robbery would have to meet the force clause requirements that are much more stringent. And then also, this would just be an absurd result. I realize we have a lot of absurdity in the categorical approach, but... That's a bold argument to make in a categorical approach. I was here arguing Texas murder a couple of years ago, so the same issue. You mean absurd as in counterfactual?  But it's hard to... The Supreme Court has said we're not going back to a world where sentencing judges have to do mini-trials. Correct. We're just kind of stuck in Wonderland as we go through these. Also, again, this would be an absurd result. If you got robberies from 26 states that no longer qualify as crimes of violence, that couldn't be what was intended here. So, in summary, there are several good reasons not to transplant Hobbs Act robberies, mens rea, into the guideline definition. And anywhere the court can find good, legally cogent reasons to insert a little common sense back into the categorical approach analysis, it should do so. And if you have no other questions, we ask the court to affirm. Thank you, counsel. Thank you. I'd like to briefly respond to some of the points made by the government. I'll start with the robbery issue. So, there's no surplusage issue. The force clause does not include threats to property. The enumerated offense is much broader, includes threats to property, property of a relative, or even somebody that happens to be present at the time of the taking. It's not absurd for the reasons that we've discussed. The commission intended to exclude reckless offenses when it adopted this definition in 2023. We've also discussed extensively how this is an exception to the rule, that this court does not read a mens rea into a guideline where it's not explicitly stated. The biggest difference is the background context of how the commission purposely imported Hobbs Act robbery, knowing how the circuits have interpreted that same exact language. And it would be odd to import Hobbs Act robbery and then say intentionally or knowingly, because then we would have a mismatch, and then we would have a slightly different definition in the guidelines as we do in Hobbs Act robbery, and moreover, that's not necessary, because the commission knows how every circuit has interpreted that same exact language, as including a scientia requirement. Her final comments sort of are consequentialist ones, but still, you wouldn't think the commission would hide a revision that will suddenly disqualify what she counted as 26 states prior felons. I think that was their intent. Okay, as evidence where? I'm sorry? As evidence where, if it's not in the commentary, I guess the question I asked her, you may have looked at the hearings leading up to it, did anyone ever say this amendment was meant to not only contract COVs, but it was meant to disqualify 26 different states and overturn multiple circuit case law? Why wouldn't they have said it anyway, or did they? I don't know that they did, Your Honor, but that doesn't mean that that was not their intent, and I think the clearest indication is in the proposed amendments. They came out and said, our goal is to exclude reckless and negligent offenses. So they came out and said that they staked out a position in 2023, they confirmed it in 2026, and also they did it with this knowledge of how Hobbs Act robbery has been interpreted by the circuits. I wanted to spell the notion that there's any actual case problem here. So the Anderson case, it sort of stated its holding is assuming arguendo, the defendant's correct, and this was indeed an accident, it's still robbery in California. And the government may be correct that, well, if you actually look at the conduct, this is reckless. But even the government agrees, at the least, this is reckless conduct. So that is an example of a state case applying its statute to conduct that is overbroad and fits outside the guideline definition. Are you familiar with the Pineda decision? I am not, Your Honor. So we satisfied the actual case requirement. It requires that we point to a case where the state's applied its statute in an overbroad way. We've done that. I've addressed how, in this case, the district court did not consider the lower range as that rule has been applied in Greer, Taisley, and Halverson. If you look at sentencing, the district court three times asked the government, well, isn't this foreclosed by Teles Martinez? Asked the defense counsel, well, doesn't that Ninth Circuit case resolve the drug objection? So I don't think there was sort of a fulsome consideration of the issues in recognizing that the court may actually be wrong about the guidelines in the way that the courts do in the Richardson line of cases. And finally, this court had questions for the government about whether Teles Martinez may still be good law. I think the fact that they are agreeing is significant. WICWARE quite explicitly said this. It talked about the rule of orderliness with respect to guideline amendments. It said a clear statement is necessary for guideline commentary to overrule prior precedent, but there's no such rule with respect to the text of the guidelines. Here we have a new definition in the text of the guidelines. WICWARE published decision says that that wipes away Santiago Esteban Hernandez. And Adair, interpreting Texas robbery, tells Martinez relied on Santiago Esteban Hernandez. It is an analogous decision with respect to California robbery. So we think WICWARE controls and says that this guideline amendment is intervening and overrules prior case law. Thank you both. It's a pleasure to have experienced counsel. Helps us a lot with these cases, even if it sometimes makes them more difficult.